## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

Renee Michelle Branch                                                      Plaintiff

v.                              No. 1:13-CV–119-JM-JTK

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                             Defendant

### Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge

James M. Moody, Jr.  A party to this dispute may file written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court

no later than 14 days from the date of this recommendation.[1]  The objecting party must

serve the opposing party with a copy of an objection.  Failing to object within 14 days

waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Moody

may adopt the recommended disposition without independently reviewing all of the

record evidence.

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

## Reasoning for Recommended Disposition

Renee Michelle Branch seeks judicial review of the denial of her application for supplemental security income (SSI).[3]  Branch first applied for SSI in September 2007.[4] After the application was denied,[5] Branch worked at nursing home as a certified nursing assistant.[6]  She says she stopped working on October 31, 2008 because of back pain.[7]  She then reapplied for SSI.[8]  She based her claim on her back, degenerative disc disease, asthma, problems with the left knee, depression, and her weight.[9]  She claims she has been disabled since she stopped working at age 26.

**The Commissioner's decision**.  Initially, the Commissioner's ALJ denied the application,[10] but on judicial review, the district court determined the ALJ failed to

---

[3]SSA record at p. 55 (alleging disability beginning Nov. 1, 2008, the day after she quit her job as a certified nursing assistant).

[4]*Id*. at p. 777 (alleging disability beginning July 15, 2007).

[5]*Id*. at p. 67 (indicating first application was denied in Oct. 2007 for failing to cooperate with agency process).

[6]*Id*. at pp. 59, 79, 106 & 140.

[7]*Id*. at p. 680.  *See also id*. at p. 106 (reporting that she quit working as a certified nursing assistant because of severe back pain) & p. 331 (testifying that she quit her job because she it was hard to lift or stand).

[8]*Id*. at p. 55.

[9]*Id*. at p. 58.

[10]*Id*. at p. 10 (first unfavorable decision, dated Dec. 20, 2010).

properly assess Branch's credibility and remanded the case.[11]  The ALJ then obtained

updated evidence,[12] conducted a second hearing,[13] and issued a second unfavorable

decision, providing reasons for discounting Branch's credibility.[14]

     In the second decision, the ALJ determined that Branch has severe impairments

— degenerative joint disease/degenerative disc disease of the lumbar spine, scoliosis,

obesity, hypertension, migraines, depression, generalized anxiety disorder, and

learning disorder[15] — but she can do some sedentary work.[16]  Because a vocational

expert identified available sedentary work,[17] the ALJ determined Branch is not disabled

and denied the application.[18]

     After the Appeals Council denied review,[19] the ALJ's second decision became the

---

[11]*Id*. at p. 761 (W.D. Ark. remand order, dated Nov. 15, 2012).

[12]*Id*. at pp. 781 & 884.

[13]*Id*. at p. 881.

[14]*Id*. at p. 715 (second unfavorable decision, dated Oct. 18, 2013).

[15]*Id*. at p. 717.

[16]*Id*. at p. 719.

[17]*Id*. at p. 905.

[18]*Id*. at p. 727.

[19]*Id*. at p. 1.

Commissioner's final decision for the purpose of judicial review.[20]  Branch filed this

case to challenge the decision.[21]  In reviewing the decision, the court must determine

whether substantial evidence supports the decision and whether the ALJ made a legal

error.[22]  This recommendation explains why substantial evidence supports the decision

and why the ALJ made no legal error.

**Branch's allegations**.  Branch challenges the ALJ's decision that she can work.

She relies primarily on mental impairment.  She contends she meets listing 12.05C

(a listing for intellectual disability) because she has a qualifying IQ score plus and an

additional physical and mental impairment.[23]  She says, that instead of objectively

---

[20]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social
Security Act precludes general federal subject matter jurisdiction until administrative
remedies have been exhausted" and explaining that the Commissioner's appeal
procedure permits claimants to appeal only final decisions).

[21]Docket entry # 1.

[22]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the
Commissioner's findings are supported by substantial evidence and whether the
Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187
(8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant
disability benefits if the decision is not based on legal error and if there is substantial
evidence in the record as a whole to support the conclusion that the claimant was not
disabled.").

[23]Branch's brief uses the term "mental retardation" rather than "intellectual
disability."  The difference in terms flows from Rosa's law which directed federal
agencies to replace the terms "mentally retarded" or "mental retardation" with
"individual with an intellectual disability" and "intellectual disability."  The 2013
version of the regulations reflect that directive.  Because the challenged decision was

reviewing the evidence, the ALJ searched the record "for any reason to deny benefits."

For these reasons, she maintains substantial evidence does not support the ALJ's

decision.[24]

**Applicable legal principles**.  For substantial evidence to support the decision, a

reasonable mind must accept the evidence as adequate to show Branch can do some

sedentary work.[25]  Sedentary work "involves lifting no more than 10 pounds at a time

and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[26]

Sedentary work "represents a significantly restricted range of work.  Individuals who

are limited to no more than sedentary work by their medical impairments have very

serious functional limitations."[27]

The ALJ placed the following limitations on sedentary work:

> (1) occasional climbing, balancing, stooping, kneeling,
> crouching, and crawling;

---

issued in 2013, this recommendation uses the new terms.

[24]Docket entry # 13.

[25]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[26]20 C.F.R. § 416.967(a).

[27]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work.*

(2) occasional overhead work/reaching;

(3) no concentrated exposure to temperature extremes, humidity, fumes, odors, dusts, gases, or poor ventilation; and

(4) simple, routine, repetitive tasks involving incidental interpersonal contact and simple, direct, concrete supervision.[28]

The court must determine whether a reasonable mind would accept the evidence as adequate to show Ranch can work within the ALJ's parameters.

**Branch can work within the ALJ's physical parameters**.  Branch doesn't specifically challenge the ALJ's determination about her physical ability to work.  To the extent she challenges the physical parameters, the medical evidence shows no serious functional limitation preventing sedentary work.  Branch complains about disabling back, leg, knee, and shoulder pain, but diagnostic imaging shows no reason for disabling pain or limitation.  Diagnostic imaging is negative,[29] except for some slight

---

[28]SSA record at pp. 719-20.

[29]*Id*. at p. 257 (imaging of low back showing some slight decrease in intervertebral disc spaces), p. 259 (imaging of upper back showing some "very minimal" scoliosis), p. 260 (negative imaging of low back), p. 292 (negative imaging of upper back), p. 294 (negative imaging of upper back), p. 299 (negative imaging of left ankle), p. 303 (negative imaging of left foot), p. 304 (negative imaging of left ankle), p. 324 (negative imaging of shoulder), p. 473 (negative imaging of right shoulder), p. 474 (imaging of upper back showing very mild scoliosis) & p. 475 (negative imaging of low back).

decrease in disc space in the lower back and very mild scoliosis in the upper back.[30]  The

descriptors "some slight" and "very mild" do not implicate disability.  If Branch has

back, leg, knee, or shoulder pain, her weight is likely the cause.[31]

Branch's weight and height reflects morbid obesity.  Obesity can limit exertional

and nonexertional functions,[32] but the ALJ accounted for reduced function by requiring

sedentary work and limiting postural activity.  Branch minimized what she does, but

her activities exceed the ALJ's parameters.[33]

Branch's treatment history suggests no disabling physical impairment.  Branch

has rarely sought medical treatment.[34]  She may lack financial resources, but if she

---

[30]*Id*. at pp. 257 & 474.

[31]*Accord id*. at p. 901 (medical provider attributes high blood pressure and high cholesterol to my weight).

[32]SSR 02-1p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Obesity*.

[33]SSA record at p. 71 (she takes care of her husband's grandmother; she cleans grandmother's house and takes grandmother to doctor appointments); p. 97 (she takes care of disabled husband and grandmother); p. 334 (she does chores regularly: laundry, washing dishes, sweeping, vacuuming, cooking, and cleaning), p. 803 (she drives, cooks, washes dishes, vacuums, mops, makes the bed, and reads for three hours every day), p. 887 (takes care of grandmother three days a week).

[34]*Id*. at p. 256 (Nov. 22, 2008, emergency room (ER) visit for back pain; diagnosis: lumbar strain, early degenerative disc disease), p. 386 (Dec. 4, 2008, ER followup; doctor's advice: lose weight), p. 316 (Jan. 5, 2009, routine vision exam), p. 320 ( Feb. 8, 2009, ER visit for right arm and shoulder pain; diagnosis: shoulder sprain with arthritic exacerbation of AC joint), p. 470 (Feb. 19, 2009, ER visit after falling and hitting tail bone on steps; negative diagnostic imaging), p. 820 (Oct. 21, 2010, low cost clinic visit for low back pain and left ear pain; diagnosis: degenerative joint disease in low back, ear

experienced as much pain as she claims, she would need medical treatment.  A

reasonable person would accept the evidence as adequate to support the ALJ's decision

about Branch's physical ability to work because: (1) medical evidence shows little

impairment, (2) obesity imposes the only limitation, (3) Branch rarely seeks medical

treatment, (4) her lifting capacity exceeds the requirement for sedentary work,[35] (5)

Branch's daily activities exceed sedentary work, and (6) ALJ imposed more limitations

than the medical evidence supports.[36]

 **Branch can work within the ALJ's mental limitations**.  Listing 12.05C is one

way of qualifying for SSI based on intellectual disability.  Meeting the listing requires

"[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other

---

infection, depression, and insomnia), p. 877 (Apr. 4, 2013, ArCare clinic visit to establish
care; complaints about sleeping and high blood pressure; she reported feeling fine;
provider's advice: fish oil, watch diet, and exercise), p. 875 (Apr. 5, 2013 ArCare visit for
complaints of ear infection and pregnancy symptoms; diagnosis: elevated blood
pressure; provider's advice: watch diet and exercise), p. 874 (Apr. 23, 2013, ArCare visit
for cough and ear infection) & p. 873 (May 8, 2013, ArCare visit for birth control).  The
record includes other medical evidence, but it was generated before the time period for
which benefits were denied.

[35]*Id*. at pp. 122 & 806 (reporting that she can lift 30 pounds).

[36]For example, the ALJ excluded pulmonary irritants, but no medical evidence
suggests problems with breathing.  The only basis for the exclusion is Branch's report
that she has trouble when she is congested or exposed to a lot of smoke.  *Id*. at p. 893.
The ALJ also limited overhead reaching based on Branch's complaint of shoulder pain.
The only basis for the limitation is a one-time diagnosis of shoulder sprain with arthritic
exacerbation of AC joint in February 2009.  *Id*. at p. 320.

mental impairment imposing an additional and significant work-related limitation of function."[37]  Branch doesn't have a qualifying IQ score.

To count in proving disability, an IQ score must be valid.  Branch has two sets of IQ scores.  The first set was obtained in August 2009 via testing by her attorney's examiner; the second set was obtained in March 2010 via testing by an agency examiner. The August 2009 test scores exceed the required range.  The March 2010 test scores yielded a performance score within the required range.[38]

The ALJ rejected the March 2010 scores because Branch's responses on a malingering-detection instrument showed "a great deal of symptom exaggeration."[39] According to the examiner, Branch appeared to "consciously try[] to answer questions incorrectly."[40]  The examiner characterized the testing as invalid.[41]  This evidence provided a sufficient basis for rejecting the March 2010 scores.

---

[37]20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C (2013) (specifying one way to satisfy the listing for intellectual disability).

[38]*Compare* SSA record at p. 369 (IQ testing: verbal 92, performance 93, full scale 92) *with id*. at p. 576 (IQ testing: verbal 76, performance 68, full scale 70).

[39]*Id*. at p. 576.

[40]*Id*. at p. 577.

[41]*Id*. at p. 578.

Under the presumption of a stable IQ,[42] the August 2009 test scores are a more accurate assessment of IQ functioning.  Branch's performance on the malingering-detection instrument is the only evidence explaining the 25-point decrease in performance scores.  A reasonable mind would accept the evidence as adequate to show Branch has no valid qualifying IQ score.  Without a valid score, no basis exists for meeting listing 12.05C.

No evidence suggests Branch is intellectually disabled, but evidence shows Branch experiences periodic depression and anxiety.  When Branch used anti-depressant medication, she reported feeling "much better."[43]  This report shows her mental symptoms can be controlled with treatment.  "An impairment which can be controlled by treatment or medication is not considered disabling."[44]

The medical opinion evidence conflicts about the severity of Branch's

---

[42]*Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) ("Mental retardation is not normally a condition that improves as an affected person ages.  It is highly unlikely that an adult could gain twenty-five IQ points—a 42% increase—in six years. Rather, a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning.").

[43]SSA record at p. 388.  *See also id*. at p. 331 (reporting that primary care doctor prescribes antidepressant medication that helps mental symptoms, without medication side effects) & p. 387 (Trazodone works well).

[44]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

symptoms,[45] but sufficient evidence supports the ALJ's mental limitations.  According to the first agency mental examiner, Branch has little capacity to cope with the mental demands of work; however, the examiner attributed Branch's symptoms to the lack of treatment.[46]  According to the second agency examiner — the one who administered IQ testing — Branch can do simple, repetitive tasks; the examiner observed no difficulty with concentration.[47]  The agency medical expert reached a similar conclusion.[48]  A reasonable mind would accept the evidence as adequate to support the decision because the ALJ's mental limitations — simple, routine, repetitive tasks involving incidental interpersonal contact and simple, direct, concrete supervision — respond to Branch's symptoms.

---

[45]SSA record at pp. 330-35 (mental status exam by first agency examiner on Apr. 10, 2009; diagnosing generalized anxiety disorder, and chronic pain, with symptoms of post traumatic stress disorder due to abuse by first husband; recommending IQ testing; opining that Branch has very little capacity to cope with cognitive demands of work-like tasks or to complete work-like tasks within an acceptable time frame due to poor concentration and untreated anxiety); pp. 368-76 (attorney-directed neuropsychological evaluation on Aug. 31, 2009; reporting cognitive dysfunction, non-psychotic, secondary to general medical condition, but not low intellectual functioning) & pp. 574-83 (mental status exam by second agency examiner on Mar. 1, 2010, explaining that even though IQ testing indicated borderline intellectual functioning, responses of the malingering-detection instrument reflected great deal of symptom exaggeration; opining that Branch can do simple, repetitive tasks).

[46]*Id*. at pp. 334-35.

[47]*Id*. at pp. 577.

[48]*Id*. at pp. 361-63.

**Recommended Disposition**

Substantial evidence supports the ALJ's decision because a reasonable mind would accept the evidence as adequate to support the decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Branch's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 26th day of November, 2014.

_____
United States Magistrate Judge